# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1323

_____

Heather Burton, et al.,                    *
                                            *
          Plaintiffs - Appellees,          *
                                            *
     vs.                                    *  Appeal from the United
                                            *  States District Court
Patricia Richmond, et al.,                  *  for the Western District
                                            *  of Missouri.
          Defendants - Appellants.         *
                                            *

_____

Submitted: September 10, 2001
          Filed: January 11, 2002 (Corrected: January 18, 2002)

_____

Before LOKEN and FAGG, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

     The Defendants, six social workers from the Missouri Division of Family
Services ("DFS"), appeal from the district court's denial of their motion to dismiss
based upon qualified immunity.  The Defendants have argued that no clear

_____

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the
District of South Dakota, sitting by designation.

constitutional right existed at the relevant time to protect the Plaintiffs' liberty interests. For the following reasons, we affirm the decision of the district court.

While they were children, the Plaintiffs allege they were improperly removed from their mother's care and placed in an abusive foster home. As a result, they brought this 42 U.S.C. § 1983 suit alleging two causes of action. Their first claim is that their substantive due process rights were violated when they were placed into an abusive home without prior investigation of the guardians, no supervision was performed during the placement despite numerous specific complaints, and they were not removed from the placement for months despite knowledge of Jim Huffman's violent criminal history. The second claim is that their procedural due process rights were violated when they were removed from their mother without a hearing, were not allowed free contact with their natural parents, and were not provided a Guardian Ad Litem or appointed counsel to represent their interests. The Defendants have argued that qualified immunity bars the entirety of this lawsuit; specifically, contending at the time of the placement in 1985, the law was not clearly established that state caseworkers had a duty to protect these children.

"We review the district court's grant of a motion to dismiss for failure to state a claim de novo." Patterson v. Von Riesen, 999 F.2d 1235, 1237 (8th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted). When analyzing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs. See Patterson, 999 F.2d at 1237. In order to fully explain the scope of the history of this action, this Court provides the following time line of events as submitted in the complaint.

2

1. On January 10, 1985, Shirley Harrison, the Plaintiffs' natural mother left the Plaintiffs with her sister, Rhonda Richards, until Shirley could find a place to live.

2. On January 13, 1985, Richards informed Defendant Richmond the Plaintiffs were in her care.

3. On January 16, 1985, Defendants Richmond and Barnes recommended that Heather Burton, Thomas Burton, Jenny Brant, and Amy Burton should be placed in the home of Jean and Jim Huffman. That same day, a juvenile officer signed the proposed order giving supervision over all Plaintiffs to DFS.

4. On January 17, 1985, Judge Byron L. Kinder signed the proposed order and the children were placed with the Huffmans. The order further stated DFS must maintain supervision over the children. Apparently, notice was not given to either natural parent of the removal of their custody rights nor were the children represented by independent counsel, if in fact an actual hearing ever took place.

5. No criminal history check or home study of the Huffmans was performed prior to the placement of the Plaintiffs. Prior to January 17, 1985, Jim Huffman had been convicted of numerous felonies, including a history of sexual assault, rape, and murder. This history included molestation of other members of Jean Huffman's family.

6. In July 1985, Michelle Balikes and John Burton were placed with the Huffmans.

7. From February 26, 1985, onward, Shirley Harrison and Tom Burton, the natural father of the children, were prevented from seeing the children or removing the children from the Huffman home. No court hearings were held.

8. On or about April 29, 1985, Shirley Harrison made a complaint to DFS alleging Amy Burton had been sexually abused by Jim Huffman. No action was taken by DFS.

9. On September 18, 1987, the Plaintiffs were provided legal representation, but no hearings were scheduled and no evaluation of the children's care was performed.

10. In 1988, the Plaintiffs complained to DFS that they were suffering on-going molestation. Despite this direct complaint, no action was taken by DFS.

11. In January 1989, Defendants Barnes, Wilfong, Heskett, Haslag, Gaddie and Richmond knew of Jim Huffman's criminal record, but took no action to investigate the complaints or remove the children.

12. On January 26, 1989, Defendant Haslag informed Defendant Wilfong of Jim Huffman's criminal record.

13. On February 3, 1989, Defendant Wilfong recommended the Huffmans get legal guardianship of the Plaintiffs despite the fact the Huffmans had never made such a request.

14. On February 15, 1989, Defendant Wilfong notified the Huffmans that a home study would be performed.

4

15. In July 1989, the Huffmans objected to the home study and any criminal history check.

16. On July 25, 1989, DFS cancelled the home study without any stated reason.

17. On November 20, 1989, the Plaintiffs were removed from the Huffman home.

18. On May 17, 1990, Jim Huffman pled guilty to sexually abusing Michelle Balikes, Jenny Brandt, Amy Burton and Heather Burton.

During the January 1985 to November 1989 time period, the Plaintiffs alleged the following injuries: (1) witnessing Jim Huffman breaking the wrist of Jean Huffman; (2) sexual molestation of Jenny Burton, Amy Burton, Heather Burton and Michelle Balikes; (3) physical abuse of all Plaintiffs, including slapping, punching, and beatings with a 2 x 4 wooden board; (4) being encouraged to enter trash bins behind grocery stores to retrieve food; (5) being prevented from using the indoor bathroom, except for once a week to use the shower with no door or curtain while Jim Huffman watched; and, (6) being denied contact with their natural parents. The Defendants argue that the Plaintiffs have failed to state a cause of action, however, this Court disagrees.

## Discussion

Missouri child protection laws are facially discretionary. Accepting the facts in the well-pled complaint as true, it is clear that the Defendants in this action were performing discretionary functions, therefore, these government officials are shielded from liability for civil damages in a § 1983 action unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person

5

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989), cert. denied, 493 U.S. 1072 (1990) (citation and quotation omitted). Bearing this in mind, we must determine the following: first, whether the Plaintiffs' procedural due process rights were violated when they were removed from their mother without notice, a hearing or appointed counsel. Second, this Court must determine whether, in 1985, the law was "clearly established" that it was a violation of an individuals liberty interest for the state to remove that person from her natural parents and place her in an abusive situation, or in the alternative, whether there was a duty by the state to discover whether the situation was abusive and to remove the individuals from the placement.

## Procedural Due Process

The Plaintiffs' complaint alleges they were denied their procedural due process rights when counsel was not appointed to them at any reasonable time before or after their removal from their mother's care and custody, and when notice or hearing was not given at any relevant time prior to the placement with the Huffmans. The Defendants ask this Court to reverse the district court's denial of qualified immunity and dismiss this action. They center their arguments around the notion that the law was not clearly established in 1985-89, and that they did not exercise the requisite control over the Plaintiffs at the time of the abuse. The trial court did not address the procedural due process issue and the Defendants did not present argument, either oral or written, on Count 2 of the Complaint alleging a procedural due process violation. As a result, this issue is not properly before this Court and the district court's decision on this issue is affirmed.

## Substantive Due Process

The parties exhaustively argued the issue of whether substantive due process violations have been stated by the Plaintiffs' complaint. The Defendants have asserted three arguments that they claim preclude this action. The primary argument is that at the time of the alleged actions and inactions, substantive due process did not clearly establish a state protected liberty interest from private violence. Generally speaking, the Defendants' position is accurate; however, the alleged facts of this action lead to a different conclusion.

This Court passed upon the substantive due process rights of individuals in state care in Norfleet v. Arkansas Department of Human Services, 989 F.2d 289 (8th Cir. 1993). The Norfleet decision held that in 1991 it was clearly established that "the state had an obligation to provide adequate medical care, protection and supervision" to persons under its control in certain circumstances. Norfleet, 989 F.2d 289, 293 (8th Cir. 1993). Four-year old Taureen Norfleet was a sickly child who had, only one day prior to the events in question, been hospitalized with an asthma attack. Taureen's mother left town and left her with a babysitter. For unspecified reasons, the babysitter was arrested and Taureen was placed in a foster home by the Arkansas Department of Human Services ("DHS"). It was alleged that the foster home was not given the proper medication for Taureen and that she did not receive all of the medication that was provided. Taureen's mother, Toi, returned on the same day Taureen was taken by DHS. DHS informed Toi that her child would be returned the next day. That night Taureen suffered another asthma attack, which was ignored by the foster parent. Two hours later, Taureen was taken to the hospital with an asthma attack and an hour later she died. The Norfleet court found that Taureen's substantive due process rights were violated by the atrocious care of the DHS. This Court, however, must consider whether the same potential liability which applied in Norfleet applies to events which occurred from 1985 to 1989.

The Norfleet decision espouses an extensive analysis of the history of state duties to protect against private injury, but does not precisely state when that right was established. *Id.* at 291-93. The right to personal security is a "historic liberty interest" protected substantively by the Due Process Clause. Ingraham v. Wright, 430 U.S. 651, 673 (1977). A careful analysis of the prior case law in this area leads to the conclusion that there are two divergent sets of circumstances, one where liability can attach, and one where it does not. This Court concludes this action falls into the first category and thus, a cause of action has been stated.

While the Norfleet decision is the primary example of when liability attaches, the Supreme Court decision in DeShaney v. Winnebago County Department of Social Services provides controlling authority when liability does not attach. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). In DeShaney, numerous reports of child abuse by Joshua DeShaney's father were made to DSS. DSS investigated the reports and even removed Joshua from his father's care for a short period during an investigation, but the inquests proved to be inconclusive. *Id.* at 192-93. Ultimately, Joshua was beaten so badly by his father he suffered severe brain damage which renders him irreversibly mentally retarded and confined to a mental institution. *Id.* at 193. The Supreme Court found that the State never had a duty to intervene in Joshua's situation and that, at most, when the State temporarily removed Joshua from his father's custody to investigate potential abuse, the return of Joshua to his father was placing him in no worse a situation than he originally faced. *Id.* at 201. Most importantly, the DeShaney court found DSS took no part in creating the abusive environment. *Id.* The alleged facts of the present action are undeniably different.

The DeShaney court stated that the purpose of 42 U.S.C. § 1983 "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. That court further held:

8

> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 196-97.

The DeShaney situation revolved around whether the State should become involved in a potentially abusive situation that it had no part in creating; however, the Court further held that under "certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. The specific source of an affirmative duty to protect is the custodial nature of a "special relationship" between the individual and the State. DeShaney reasoned that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* In emphasizing this rule of law, the Supreme Court cited to the holdings of Estelle v. Gamble, 429 U.S. 97 (1976); Youngberg v. Romeo, 457 U.S. 307 (1982); and Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983), all of which were decided before the Plaintiffs' placement in January 1985.

The key difference between the DeShaney and Norfleet decisions is whether the State has assumed a custodial role in an individual's life and whether, as a result of that role, the State has actively participated in creating the dangerous environment. Assuming the claims of the Plaintiffs are true, by no stretch of the imagination can it be said that the Plaintiffs' liberty interests in this action were not infringed. The DeShaney court recognized in footnote 9 that a prison-like setting could be created in a foster home situation. DeShaney, 489 U.S. at 201. While DeShaney anticipated that the abusive situation could develop in a state-run foster care home, the Plaintiffs

in this action allegedly were not even given the benefit of the standard protections built into the State foster parent system, i.e., investigation and certification of both the foster parents and the home.

The Defendants' alternative support for their claim is that they are protected by qualified immunity under the Harpole decision. Harpole v. Arkansas Department of Human Services, 820 F.2d 923 (8th Cir. 1987). The Harpole case involved facts that are more similar to DeShaney than to the present action. In Harpole, a grandmother sued the Arkansas Department of Human Services ("DHS"), for failing to remove her grandchild from the custody of his mother who had three previous children die from either Sudden Infant Death Syndrome or apnea. *Id.* at 924. Harpole alleged that state law and the Social Security Act mandated that DHS remove the grandchild from the mother because the mother neglected the medical needs of the child. *Id.* The Harpole court found that none of the statutes cited contained language mandating action by DHS. *Id.* at 926. Further, that court followed the consistent logic that DHS did not create the dangerous situation because the child was always in the custody of his mother. *Id.* at 925. The Harpole decision reiterated the belief "that the concept of special relationships" are not "intended to extend beyond prison or prison-like environments." *Id.* at 927. In the present action, the Plaintiffs profess that DFS exerted control over the children by actively moving and holding them in the Huffman home, thereby creating a "prison-like environment." If true, qualified immunity would not attach and the Defendants could be liable for some or all of the Plaintiffs' injuries.

The Plaintiffs in the present action have met the threshold requirements set forth in DeShaney as the Estelle-Youngberg analysis. Under the Plaintiffs' alleged facts and theory of the case, DFS took an active role in the Plaintiffs' lives by pursuing an ex parte removal of them from their mother, making a recommendation for the children's placement with the Huffmans, and assuming court-ordered continuing supervision rights over the Plaintiffs. Obviously, minor children are

10

unable to care for themselves and require basic human needs to be provided by a third party. Lastly, it is contended that the Plaintiffs were not free to leave the Huffman home and were denied contact with their natural parents. These alleged facts demonstrate a custodial situation that is a "prison-like setting." *Id.* at 201. Under the Plaintiffs' theory, DFS created the abusive situation which led to the Plaintiffs being in a "worse position than that in which [they] would have been had [the State] not acted at all." *Id.*

## Conclusion

Foster care is designed to provide basic human needs of "food, clothing, shelter, medical care and reasonable safety" to minor children. DeShaney, 489 U.S. at 200, (citing Estelle and Youngberg). The Plaintiffs have alleged that the DFS workers created and maintained an abusive situation by recommending placement with the admitted sexual abuser, Jim Huffman, by denying the Plaintiffs the help of their parents, and by denying them access to the justice system. In fact, it is further asserted that even after discovering the long and vile criminal history of Jim Huffman, DFS recommended that the Huffmans receive permanent custody of the Plaintiffs. The Huffmans never requested and had never received permanent custody of the Plaintiffs; therefore, this allegation could demonstrate not only the custodial role of the DFS, but a grossly deliberate indifference to the Plaintiffs' welfare. If the Plaintiffs can prove their allegations, the DFS will have conclusively "transgresse[d] the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id.*

It is clear that the district court's conscience was shocked at the allegations of the Plaintiffs. The purpose of qualified immunity is to ensure the government is not so overwhelmed by trivial claims of negligence that it is unable to function; however, this action is precisely the classic situation where that doctrine should not and does not apply. The decision reached by this Court today will not trigger innumerable

11

lawsuits because the holding of this case is so closely limited by the precedents set forth in decisions such as Estelle, Youngberg, Revere, DeShaney, Norfleet, and most recently, S.S. v. McMullen, 225 F.3d 960 (8th Cir. 2000)(en banc).  The Plaintiffs have stated procedural and substantive due process claims against the Defendants and are put to their proof thereon.  Accordingly, we affirm the district court's denial of the Defendants' motion to dismiss based upon qualified immunity.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.