# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2487

_____

| | | |
|---|---|---|
| Heather Burton; Amy Burton; Thomas Burton; Jenny Brandt; Michelle Balikes; John Burton, | * * * * | |
| Plaintiffs - Appellees, | * * | |
| v. | * * | |
| Patricia Richmond, | * * | |
| Defendant - Appellant, | * * | |
| Jeanie Heskett, | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Defendant, | * * | |
| Mary Ann Barnes, formerly known as Mary Ann Allen, | * * * | |
| Defendant - Appellant, | * * | |
| Susan Wilfong; David Gaddie; Leann Haslag, | * * * | |
| Defendant. | * | |

_____

Submitted: January 12, 2004

Filed: June 2, 2004

_____

Before LOKEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Defendants Patricia Richmond and Mary Ann Allen appeal from the District Court's denial of their motion for summary judgment on grounds of qualified immunity. Because we determine that there was no violation of a clearly established constitutional right, defendants are entitled to qualified immunity. We reverse and remand the case to the District Court and direct the entry of judgment in favor of defendants.

## I.

In January 1985, plaintiffs' mother, Shirley Burton, left them with their aunt, Rhonda Richards. Rhonda and her mother, Jean Huffman, agreed that four of the children—Amy, Jenny, Heather and Thomas—would move in with Jean and her husband, Jim Huffman, while Michelle and John would remain with Rhonda until the end of the school year.[1] After working out the details of this arrangement, Rhonda contacted Richmond, a social worker at the Missouri Division of Family Services ("DFS"). Rhonda asked for Richmond's assistance because the family wanted to prevent Shirley from returning and taking plaintiffs back to live with her. To this end, Allen, another DFS caseworker, informed a juvenile officer of the arrangement worked out by Rhonda and Jean, and the officer recommended to the Cole County Circuit Court that it place the children with Rhonda and Jean as per their arrangement. The court then entered an order giving physical custody of the children to Rhonda and Jean and requiring continuing supervision of the placement by DFS.

_____

[1]Because two of the plaintiffs had different last names at different times, we follow the lead of the District Court and refer to plaintiffs and members of their family by their first names.

The court retained legal custody, so the children remained wards of the court, even after the court-ordered placement with their relatives. In accordance with Rhonda and Jean's initial agreement, the court later ordered the transfer of physical custody of Michelle and John from Rhonda to Jean at the end of the school year. Neither Allen nor Richmond conducted a home study or criminal background check of either home before the court-ordered placement.[2]

Despite having abandoned them at Rhonda's two months earlier without any provision for their care, by March 1985 Shirley was attempting to regain custody of plaintiffs. Shirley called Richmond, shortly after the court-ordered placement in 1985 and informed her that Amy had complained that someone was "hurting her down there." Richmond did not investigate this complaint further. In April 1985, Rhonda informed Allen that Shirley had shown up at a family barbeque and accused Jim Huffman of sexually abusing Amy. Shirley met with Allen the following day, yet did not tell Allen of her suspicions. Allen took no action in response to Rhonda's report of Shirley's allegation of sexual abuse. In November 1989, the children were removed from the Huffman home after another of Shirley's sisters, Saundra Oldham, called a hotline and reported her suspicions of sexual abuse. The children were immediately removed from the Huffmans's care. Jim Huffman pleaded guilty in May 1990 to sexually abusing the female children.

---

[2]Approximately seven or eight years earlier, DFS took Michelle and Jenny into custody because of suspected physical abuse by Shirley's husband. They were placed with the Huffmans by court order. DFS officials conducted a home study and criminal background check prior to this placement. This investigation revealed that Jim Huffman had been convicted of murder and had once had his parole revoked. Nonetheless, his parole officer vouched for him and informed DFS officials that Jim could provide a good home for the children. In 1978, the court returned custody of the children to Shirley and her husband.

Plaintiffs brought suit against six DFS workers under 42 U.S.C. § 1983 (2000), claiming that their failure to conduct a background check prior to the placement and their failure to act promptly to remove them from the Huffmans' care despite receiving two allegations of sexual abuse, one reported directly by Shirley and the other starting with her but reported by Rhonda, violated their substantive due process rights under the Fourteenth Amendment. Before discovery in this case, the District Court denied defendants' motion to dismiss the complaint on grounds of qualified immunity, a decision which this Court upheld. Burton v. Richmond, 276 F.3d 973 (8th Cir. 2002) (hereinafter "Burton I"). After discovery, defendants moved for summary judgment on the basis of qualified immunity. The District Court granted summary judgment to four defendants on this basis, but determined that Allen and Richmond were not entitled to qualified immunity. Although this Court generally does not have jurisdiction to hear appeals from the denial of motions for summary judgment, an order denying summary judgment on the grounds of qualified immunity is immediately appealable under the interlocutory appeal doctrine. Behrens v. Pelletier, 516 U.S. 299, 307 (1996); Hawkins v. Holloway, 316 F.3d 777, 781 (8th Cir. 2003).

## II.

Governmental officials are entitled to qualified immunity under § 1983 when performing discretionary functions unless they violate clearly established law in executing their duties. Burton I, 276 F.3d at 976. In examining a claim for qualified immunity, the court must first determine whether a defendant's actions violate a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only after a constitutional violation has been shown does the court then determine whether the right at issue was clearly established at the time of the violation. Id. Plaintiffs argue that defendants' failure to conduct a background check prior to the court-ordered placement with the Huffmans and their failure to remove plaintiffs from the Huffman

-4-

home despite receiving two reports of sexual abuse by Jim Huffman violated their substantive due process right to bodily integrity.

The state does not have a general duty to protect individuals from harm at the hands of private actors. DeShaney v. Winnebago County Soc. Servs. Dep't, 489 U.S. 189, 197 (1989). A substantive due process right to protection can arise under two theories. Under the first theory, the state may owe a duty to protect individuals in its custody. Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc), cert. denied, 507 U.S. 913 (1993). Under the second, the state may owe a duty to protect individuals if it created the danger to which they become subject. Id.; see also S.S. v. McMullen, 225 F.3d 960, 962 (8th Cir. 2000) (en banc) ("[I]f the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort."), cert. denied, 532 U.S. 904 (2001). Plaintiffs argue that they were owed a duty by defendants, employees of DFS, under both theories.

As to custody, the summary-judgment record shows that the Cole County Circuit Court placed plaintiffs with the Huffmans and DFS was directed to exercise continuing supervision over the court-ordered placement, but the court retained legal custody of the children. (Dist. Ct. Order 15). Furthermore, DFS did not have physical custody of these plaintiffs before the court-ordered placement.[3] Plaintiffs' mother initially placed them with Rhonda who agreed to keep physical custody of two of them and Jean agreed to take custody of the other four. It was only after the family made these custodial arrangements that they contacted defendants and involved the juvenile court. In effect, the family made their own custodial determinations and then went to the court in order to get them legally sanctioned. Defendants merely assisted

---

[3]Although DFS had previously taken two of the plaintiffs into the agency's custody prior to the 1977 placement with the Huffmans, legal and physical custody had been returned to Shirley before the 1985 placement.

a family to obtain the protection of the state court in order to prevent an unstable mother from demanding the return of her children.[4]

The District Court determined DFS had a duty to protect plaintiffs because there was "a special custodial relationship . . . created by the state." <u>Norfleet v. Ark. Dep't of Human Servs.</u>, 989 F.2d 289, 293 (8th Cir. 1993). The District Court felt bound to apply <u>Norfleet</u> in light of this Court's earlier decision in this case, which the District Court believed established as the law of the case that there was such a special custodial relationship between plaintiffs and DFS. (Dist. Ct. Order 15). This was error. Our earlier decision in this case dealt only with the allegations made by plaintiffs in their complaint. In the complaint, plaintiffs "alleged facts demonstrat[ing] a custodial situation," <u>Burton I</u>, 276 F.3d at 979, but such facts are not supported by the record developed by discovery and before the District Court at the summary-judgment stage of the proceedings. Thus, the District Court was free to reassess whether plaintiffs had adequately shown the existence of a special custodial relationship creating a duty to protect. <u>Cf.</u> <u>McKenzie v. Bellsouth Telecomms., Inc.</u>, 219 F.3d 508, 513 (6th Cir. 2000) (noting that an appellate court's earlier "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery"). Indeed, the District Court determined there was no evidence to show that plaintiffs were in the legal custody of DFS at the time of the sexual abuse in the

---

[4]Shirley had difficulty coping with her duties as a mother. In January 1977, Michelle and Jenny were placed in foster care after Rhonda reported possible physical abuse in the Burton home. Ultimately, the children were placed in the Huffman home, but in August 1978, custody was returned to Shirley. In 1981, Shirley's children were again taken into DFS custody for a few days. In late 1984, the juvenile court opened a protective services case for plaintiffs because Shirley had failed to ensure that they all received their necessary immunizations. In late November 1984, Allen investigated Shirley after receiving a report of abuse and neglect.

present case.[5] (Dist. Ct. Order 15). Nevertheless, the District Court proceeded on the assumption, incorrectly derived from Burton I, that the county court's order requiring DFS to maintain supervision over the placement with the Huffmans created an ongoing duty for the agency to protect plaintiffs under the Due Process Clause. We disagree with that view of the law and hold that DeShaney-type liability can only be imposed "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." DeShaney, 489 U.S. at 200. Here, DFS never had custody of the plaintiffs, nor can it fairly be said that DFS had control of them. Cf. Terry B. v. Gilkey, 229 F.3d 680, 682 (8th Cir. 2000) (refusing to find a duty to protect arising from a probate court's order requiring the Arkansas Department of Human Services to "'maintain an open Protective Services case on these minor child[ren] for future assistance and services that are deemed necessary'").

Nor did defendants have a duty to protect plaintiffs under the state-created danger theory. The danger in this case—the placement in the Huffman home—was created by Rhonda and Jean's agreement as to the best custodial arrangement for the family. Neither DFS nor the individual defendants took an active role in creating this placement; they merely helped the family get recognition from the juvenile court of the changed custodial arrangement. The placement was made by the court upon recommendation from the juvenile officer and did not result directly from any action taken by either appellant. Recommending to the juvenile officer the placement agreed to by the plaintiffs' aunt and grandmother was not sufficient to create a duty

---

[5]Subsequent to oral argument, plaintiffs supplemented the record and provided this Court with an order from the Cole County Circuit Court that referred to plaintiffs as within the legal custody of DFS. This order is dated August 1, 1989, more than four years after the complained-of conduct, thus is not evidence that plaintiffs were in the legal custody of DFS in 1985. We refuse to presume the existence of legal custody from a single court order that merely references DFS as having legal custody of plaintiffs four years after the relevant time period.

to protect the children while in the placement.  Cf. Milburn ex rel Milburn v. Anne Arundel County Dep't of Soc. Servs., 871 F.2d 474, 476 (4th Cir.) (refusing to find a duty to protect arising from the state's placement of a child in a foster home when the parents voluntarily placed the child in the home), cert. denied, 493 U.S. 850 (1989).

Even assuming arguendo that defendants had a duty to protect plaintiffs from harm at the hands of Jim Huffman, plaintiffs have nonetheless failed to provide sufficient evidence of a  substantive due process violation by the defendants.  Before official conduct or inaction rises to the level of a substantive due process violation it must be so egregious or outrageous that it is conscience-shocking.  County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental official is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.");  Hawkins, 316 F.3d at 780.  The conduct at issue in this case consists in part of defendants' failure to respond to two reports of sexual abuse and Allen's failure to conduct a background check of the Huffmans prior to the placement of plaintiffs with them.  Each defendant received only a single and isolated complaint of possible sexual abuse in the Huffman home. The complaints were made by Shirley, the mother who previously had abandoned plaintiffs and who was attempting to reassert her parental rights.  In these circumstances, defendants' failure to investigate is not so outrageous or egregious as to shock the conscience and thus the failure to investigate did not violate plaintiffs' substantive due process rights.  Cf. DeAnzona v. City and County of Denver, 222 F.3d 1229, 1235 (10th Cir. 2000) ("Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience-shocking.").

Similarly, Allen's failure to conduct a home study prior to the court-ordered placement did not violate plaintiffs' substantive due process rights.  The juvenile court never ordered DFS to conduct such a study prior to placing the children in the

-8-

custody of Rhonda and Jean as requested by the family. In light of the prior successful placement of certain plaintiffs with the Huffmans in 1977, the failure to conduct a home study and background check rises at most to the level of negligence, which is not sufficient to constitute a violation of substantive due process rights. Lewis, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). The 1977 check had revealed Jim Huffman's prior conviction and parole revocation, yet the same juvenile officer who recommended the 1977 placement with the Huffmans further recommended the 1985 placement with them. In addition, the same Cole County Circuit Court judge oversaw both placements. Furthermore, there was no allegation of sexual abuse or mistreatment during the 1977 placement. Any failure on Allen's part to conduct a home study prior to the 1985 placement does not shock the judicial conscience. Cf. Nicini v. Morra, 212 F.3d 798, 814 (3d Cir. 2000) (en banc) (refusing to hold that a social worker's failure to conduct a more thorough criminal background check than that required by agency policy was conscience-shocking deliberate indifference).

Because there was no duty to protect and, even if there was such a duty, because defendants' actions were not conscience-shocking, the District Court erred in concluding that plaintiffs' constitutional rights were violated by defendants' conduct. Richmond and Allen are entitled to qualified immunity because plaintiffs have failed to show a constitutional violation.

## III.

Assuming arguendo that plaintiffs have shown a constitutional violation, defendants are still entitled to qualified immunity if the alleged right at issue was not clearly established at the time of the complained-of conduct in 1985. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We believe the constitutional right of children under DFS supervision, yet not within DFS custody, to be free from abuse in a court-ordered placement was not clearly established in 1985. Courts have split on whether

children in the mid-1980s had a clearly established right to reasonable safety while placed in foster care after having been taken into state custody. Compare Yvonne L. ex rel Lewis v. N.M. Dep't of Human Servs., 959 F.2d 883, 893 (10th Cir. 1992) (right clearly established as of 1985); K.H. ex rel Murphy v. Morgan, 914 F.2d 846, 849 (7th Cir. 1990) (right clearly established in 1986); Taylor ex rel Walker v. Ledbetter, 818 F.2d 791, 797 (11th Cir. 1987) (recognizing right protected child injured in 1982), cert. denied, 489 U.S. 1065 (1989); Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 141 (2d Cir. 1981) (recognizing right protected child injured during 1970s), cert. denied, 464 U.S. 864 (1983); with White ex rel White v. Chambliss, 112 F.3d 731, 738 (4th Cir. 1997) (right not clearly established in 1992); Eugene D. ex rel Olivia D. v. Karman, 889 F.2d 701, 711 (6th Cir. 1989) (right not clearly established in 1982), cert. denied, 496 U.S. 931 (1990); Doe v. Bobbitt, 881 F.2d 510, 511 (7th Cir. 1989) (right not clearly established in 1984), cert. denied, 495 U.S. 956 (1990). This Court did not find such a duty until 1993. Norfleet, 989 F.2d at 293. Given the wide divergence of views on whether the right to protection from abuse was clearly established for children in state custody placed in foster care, we refuse to find that a right to protection while under state supervision, yet not in state custody, was clearly established in 1985. The District Court erred when it ruled that in 1985 plaintiffs had a clearly established constitutional right to be protected from abuse at the hands of a private individual while under state supervision yet not in state custody.

## IV.

It is regrettable that plaintiffs suffered sexual abuse at the hands of their step-grandfather. But for the reasons stated, their attempts to assert constitutional claims for damages against Allen and Richmond cannot succeed. The order of the District Court is reversed and the case is remanded for the entry of summary judgment in favor of Allen and Richmond on the basis of qualified immunity.

_____