# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1190

_____

| | | |
|---|---|---|
| Ronald Stodghill, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Wellston School District; Dorothy | * | |
| Moore, in her official capacity as the | * | |
| elected Board of Directors of the | * | |
| Wellston School District; Dwight | * | |
| Whitfield, in his official capacity as | * | Appeal from the United States |
| the elected Board of Directors of the | * | District Court for the |
| Wellston School District; Linda | * | Eastern District of Missouri. |
| Whitfield, in her official capacity as | * | |
| the elected Board of Directors of the | * | |
| Wellston School District; Deserata | * | |
| Hughes, in her official capacity as | * | |
| the elected Board of Directors of the | * | |
| Wellston School District; Donald | * | |
| Gardner, in his official capacity as | * | |
| the elected Board of Directors of the | * | |
| Wellston School District, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Charles Brown, individually and as | * | |
| member of the Special Administrative | * | |
| Board of the Wellston School District; | * | |
| Gary Beals, individually and as member | * | |
| of the Special Administrative Board | * | |
| of the Wellston School District; | * | |
| Cassandra M. Hollins-Wallace, | * | |

individually and as member of the     *
Special Administrative Board of the    *
Wellston School District,               *
                                      *
        Defendants/Appellants.     *

_____

Submitted: November 14, 2007
Filed: January 9, 2008

_____

Before RILEY, BOWMAN, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Ronald Stodghill (Stodghill) filed suit against Missouri's Wellston School District (district), members of the district's Board of Directors, and members of a Special Administrative Board (SAB) charged with temporary administration of the district. Stodghill alleged the SAB was appointed to administer the district after the school district lost accreditation, and thereafter Stodghill's employment as the district's superintendent was ended. Stodghill's complaint claimed one or more of the SAB members made stigmatizing public comments about Stodghill in connection with his severance. Stodghill sought damages and a name-clearing hearing to vindicate his liberty interest in his good name.

The SAB members moved to dismiss the claim on the basis of qualified immunity. The district court denied the motion to dismiss, finding Stodghill's complaint alleged sufficient facts to thwart a claim of qualified immunity. The school district appeals, and we reverse.

## I.    BACKGROUND

Stodghill filed suit against the district, alleging the following facts.[1] Stodghill had served as the superintendent of the district since 1984. Stodghill's contract included a provision that his employment could be terminated before the contract's set expiration "in accordance with the terms of the contract, applicable law, Board regulations and policies." In 2003, the district failed to meet accreditation requirements. In 2005, in order to maintain provisional accreditation, the district needed a certain number of points under the Missouri School Improvement Program (MSIP), a methodology used by the State Board of Education to evaluate Missouri public school programs for accreditation purposes. As a part of the MSIP, students' reading level performance was tested as part of the Missouri Assessment Program (MAP). After initially appearing to meet the required testing levels under the MAP tests, the district's scores were disallowed because the scores improved too greatly to be considered legitimate.

Under Missouri law, whenever a school district is unaccredited for two successive years, "its corporate organization shall lapse." Mo. Rev. Stat. § 162.081(1). In June 2005, the state board of education declared the district "lapsed" and appointed a three member SAB to administer the district. Missouri law provides the state board of education may appoint such a board, which is authorized "to retain the authority granted to a board of education for the operation of all or part of the district[.]" Mo. Rev. Stat. § 162.081(4)(1). Missouri law also states "the [SAB] . . . shall [not] be considered a successor entity for the purpose of employment contracts, unemployment compensation payment . . . or any other purpose." Mo. Rev. Stat. § 162.081(7).

---

[1]The defendants do not dispute the facts for the purposes of the motion to dismiss, and challenge only the legal determination of qualified immunity based upon the facts alleged in Stodghill's complaint.

Stodghill alleged that in June of 2005, the district stopped paying his salary, and a SAB member instructed Stodghill to vacate his office. Stodghill claimed he was never formally told he had been terminated, but he concluded this was the case. Stodghill also alleged the SAB members "represented to the public through the print and electronic media that: a. Cheating had occurred in the Wellston School District on its MAP tests, and particularly at the high school, which was the reason that students achieved higher test scores than in previous years . . . [and] b. The District failed to receive even provisional accreditation under [Stodghill's] leadership."

Stodghill filed suit against, *inter alia*, the SAB board members in both their official and individual capacities. Stodghill raised a wide array of claims under both statutory and constitutional provisions. Pertinent to this appeal, Stodghill sought damages and a "name clearing hearing" to vindicate his liberty interest in his good name.

The district court noted, "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." (quoting Winegar v. Des Moines Ind. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994)). The district court also recognized such a liberty interest may arise "in connection with a discharge." (quoting Green v. St. Louis Hous. Auth., 911 F.2d 65, 69 (8th Cir. 1990)).

The SAB members sought qualified immunity. The district court addressed the SAB members' arguments that (1) the SAB was not Stodghill's employer, (2) the SAB did not actually terminate Stodghill, because his contract was terminated by operation of law, rather than any affirmative act of the SAB, and (3) the statements Stodghill alleged the SAB members made were too "broad and vague . . . [to] necessarily refer to [Stodghill]."

The district court rejected the SAB members' contentions, and the SAB members filed a motion to reconsider the denial of qualified immunity. The SAB members alternatively asked the district court to dismiss Stodghill's complaint for failure to meet federal pleading requirements, or to order Stodghill to provide additional facts so the SAB members could "have a meaningful opportunity to show, before discovery, that alleged actions by them were objectively reasonable in light of clearly established law." The district court denied these requests.

On appeal, the SAB members contend the district court erred in denying qualified immunity. First, the SAB members argue Stodghill cannot demonstrate he was sufficiently stigmatized by the alleged statements. Second, the SAB members contend they were not Stodghill's employer, and the alleged statements were not made in connection with Stodghill's separation from employment, because the separation occurred via operation of law. Finally, the SAB members assert the district court should have, at least, granted their motion for a more definite statement of the allegations in order to address more fully the issue of qualified immunity. Because the alleged statements were not, as a matter of law, sufficiently stigmatizing, we reverse.

## II.    DISCUSSION

"This court reviews the district court's conclusion on the qualified immunity issue de novo . . . looking at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party." Gunter v. Morrison, 497 F.3d 868, 873-74 (8th Cir. 2007) (citation, alterations and internal quotation marks omitted). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Burton v. Richmond, 276 F.3d 973, 975 (8th Cir. 2002) (citation omitted). "When analyzing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we must

accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." Id. (citation omitted).

A procedural due process right to a name clearing hearing under certain circumstances is clearly established. See Board of Regents v. Roth, 408 U.S. 564, 573 & n.12 (1972); Putnam v. Keller, 332 F.3d 541, 546-47 (8th Cir. 2003). "A government employee is entitled to procedural due process in connection with being discharged from employment only when he has been deprived of a constitutionally protected property or liberty interest." Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993) (citation omitted). "To establish protected liberty interests, plaintiffs [are] required to establish that a [government] official, in connection with discharging plaintiffs, publicly made allegedly untrue charges against them that would stigmatize them so as to seriously damage their standings and associations in their community, or foreclose their freedom to take advantage of other employment opportunities." Id. (citations omitted); see also Roth, 408 U.S. at 573-74.

## A.    The Alleged Statements

In reviewing whether allegedly defamatory statements are sufficient to warrant a right to a name clearing hearing, "[t]he requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." Buchholz v. Aldaya, 210 F.3d 862, 866 (8th Cir. 2000) (citation omitted). Upon first blush, it appears as though one of the two statements Stodghill alleges might rise to this level. However, upon closer inspection, neither statement suffices.

Stodghill alleged the SAB members "represented to the public through the print and electronic media that: a. Cheating had occurred in the Wellston School District on its MAP tests, and particularly at the high school, which was the reason that

-6-

students achieved higher test scores than in previous years . . . [and] b. The District failed to receive even provisional accreditation under Plaintiff's leadership."

The district court correctly noted, "As a preliminary matter, only the first of the alleged representations can potentially form the basis of a liberty interest claim . . . [because a]llegations about [Stodghill's] job performance do not rise to an actionable level." The district court's assessment of the second alleged statement is correct. See Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir. 1994) ("Unsatisfactory performance or general misconduct are insufficient to create a stigma that implicates an employee's liberty interest in his reputation." (citation omitted)). In Mascho, Mascho's employer publicly accused Mascho of "not performing the functions of a supervisor." Id. Mascho's employer also advanced as a reason for terminating Mascho, that Mascho failed to comply with the spirit of a drug-free workplace policy when he failed to report suspected drug usage. Id. We distinguished claims of general misconduct or unsatisfactory performance from claims involving direct dishonesty, immorality, criminality or racism. Id. Even though Mascho, as the supervisor, was accused of looking the other way and failing to report suspected drug usage, we characterized this as an accusation of unsatisfactory performance, and held such an accusation was insufficient "to create the level of stigma necessary to implicate Mr. Mascho's liberty interest in his reputation." Id.

Stodghill asserts the first statement challenges his honesty. Stodghill contends the statement did not "generally and/or generically accuse[] [Stodghill] of misconduct, but of cheating within the District on its MAP tests." Stodghill further contends, "Apparently, the [SAB members] do not consider public allegations of cheating involving Stodghill to be a public comment related to dishonesty."

This characterization of Stodghill's complaint is unavailing. Stodghill did not allege the SAB members accused *him* of cheating. Rather, Stodghill alleged the SAB

members stated, "Cheating had occurred in the Wellston School District on its MAP tests, and particularly at the high school, which was the reason that students achieved higher test scores than in previous years . . . ." The SAB members' statement that cheating had occurred under Stodghill's watch is not a direct assault on Stodghill's honesty. Rather, the charge challenges Stodghill's performance in effectively overseeing the district. The statement is relatively analogous to the accusation in Mascho that the plaintiff had failed to report suspected drug usage. In Mascho, the plaintiff was not accused of having used drugs, only of unsatisfactory performance in overseeing the drug-free workplace policy. Mascho, 24 F.3d at 1039. Similarly, according to Stodghill's complaint, the SAB members did not accuse *Stodghill* of cheating, but simply stated cheating occurred *on his watch*.[2] Dishonesty, immorality, criminality, racism or other similar stigma relating to Stodghill cannot be inferred from the general cheating charge.

Stodghill's complaint fails to allege a sufficiently stigmatizing statement, and the SAB members are entitled to qualified immunity. Because we conclude the SAB members are entitled to qualified immunity on this basis, we need not discuss the remaining contentions. See Gier v. Educ. Serv. Unit No. 16, 66 F.3d 940, 944 (8th Cir. 1995).

### III.   CONCLUSION

We reverse the district court's judgment and remand with instructions to grant the SAB members' motion to dismiss on the basis of qualified immunity.

————————————————

[2]The SAB members did not publically assert Stodghill condoned the cheating, or that Stodghill was even aware of the cheating. During oral argument, Stodghill allowed no further clarification or specificity could be alleged.