Sue WELLS, Administratrix of the Estate of Laverne Sanderlin, Deceased, Representing Herself, Barbara Patton, John Sanderlin, Tom Sanderlin, and the Estate of the Deceased; and Sue Wells, Barbara Patton, John Sanderlin, and Tom Sanderlin, Individually and as Taxpayers of the State of Arkansas, Plaintiffs,

v.

Woodson D. WALKER, Bobby L. Roberts, Ph.D., James Mason, A.L. Lockhart, and Clifton Lambert, In their Individual Capacities; and Woodson Walker, Bobby L. Roberts, Ph.D., James Mason, Morris "Jit" H. Dreher, and Donald H. Smith, In their Official Capacities as Members of the Arkansas State Board of Correction, A.L. Lockhart, In his Official Capacity as Director of the Arkansas Department of Correction and the Arkansas Department of Correction, Defendants.

No. PB–C–87–384.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Oct. 16, 1987.

Charles Karr, Fort Smith, Ark., for plaintiffs.

A. Carter Hardage, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for defendants.

MEMORANDUM AND ORDER

HENRY WOODS, District Judge.

The defendants, Woodson D. Walker, Bobby L. Roberts, Morris H. Dreher,

James Mason, Don Smith, A.L. Lockhart, Clifton Lambert and the Arkansas Department of Correction have moved to dismiss the complaint against them under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow the defendants' motion is granted.

## I. BACKGROUND

On July 10, 1986, Larry Dean Robertson was arrested in Johnson County, Arkansas and charged with theft by receiving and felon in possession of a firearm. Robertson had previously been convicted of aggravated assault in the State of Mississippi and, at the time of his arrest in Arkansas, was wanted by Marshall County, Mississippi authorities on an outstanding felony charge. Robertson pled guilty to the Johnson County charge of felon in possession of a firearm, the theft count having been dismissed, and was sentenced to serve eighteen (18) months in a facility administered by the Arkansas Department of Correction.

On April 20, 1987, Robertson was granted an early release from custody as the result of the Arkansas State Board of Correction's invocation of the "Prison Overcrowding Emergency Powers Act of 1987," Act 418 of 1987. He was given a check for $25.00 and, in accord with Department of Correction policy, was transported to the Trailways Bus Station in Dumas, Arkansas because that was the nearest public transportation facility. Within the bus station was C & S Fabric, a store owned and operated by Laverne Sanderlin. On April 21, 1987, less than twenty-four (24) hours after his release, Robertson is alleged to have brutally murdered Laverne Sanderlin in her store. Robertson is presently standing trial for that crime in the state court.

The plaintiffs in this suit, representing the estate and family of Laverne Sanderlin and the taxpayers of the State of Arkansas, have filed their claim under 42 U.S.C. § 1983 seeking damages for wrongful death from members of the Arkansas State Board of Correction, and the Director and an employee of the Arkansas Department of Correction. Other claims have also been asserted under Arkansas tort law, Arkansas statutory law and the Arkansas Constitution.

## II. 42 U.S.C. § 1983

It is the plaintiffs' contention that the defendants, by their collective action in releasing and transporting Robertson, deprived Laverne Sanderlin of her life and "liberty interest" in personal security without due process of law as required by the Fourteenth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 673–74, 97 S.Ct. 1401, 1413–14, 51 L.Ed.2d 711 (1977) (unjustified intrusions on personal security are within the scope of due process "liberty" interest). The issue here is whether, assuming all the allegations of the complaint to be true, the deprivations complained of give rise to a cause of action under 42 U.S.C. § 1983. The court finds that they do not.

To state a claim under § 1983 it must be alleged that (1) the conduct of a person acting under color of state law (2) deprived a person of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1980). At the time in question Robertson was not in state custody nor was he acting on behalf of the state. The brutal acts of which the plaintiffs complain were committed, if at all, by a private individual.

Nonetheless, the plaintiffs seek to hold the defendants responsible for Robertson's alleged acts because they knew, or should have known, of Robertson's dangerous propensities but, in reckless disregard of the victim's interest in personal security, released him at her place of business anyway. The plaintiffs' argument is that a "special relationship" existed because of the defendants' knowledge and affirmative act of transportation, and that this relationship created a duty to protect or warn the victim.

The seminal case addressing the issue of whether § 1983 liability may be predicated upon the negligent or reckless release from state custody of a dangerous inmate is *Martinez v. California*, 444 U.S. 277, 100

S.Ct. 553, (1980). In that case a parolee, who had been granted parole despite his history as a "Mentally Disordered Sex Offender not amenable to treatment," murdered a fifteen-year-old girl five months after his release. The Supreme Court assumed, as alleged in the complaint, that the parole board knew, or should have known, that the parolee's release created a clear and present danger such an incident would occur. *Id.* at 280, 100 S.Ct. at 556.

Without dissent the court held that the action of the parolee could not be characterized as "state action" for the purpose of § 1983 liability. Three reasons were given for this decision. First, a period of five months had elapsed between the parolee's release and the victim's murder. Second, the parolee was in no sense an agent of the parole board and, third, the parole board was not aware the victim, as distinguished from the public at large, faced any special danger. However, the court went on to say that it did not decide "a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole." *Martinez v. California*, 444 U.S. at 284–85, 100 S.Ct. at 558–59.

The plaintiffs have attempted to distinguish *Martinez* on its facts and argue that this is the type of case for which the *Martinez* court left the door to § 1983 liability open. They note particularly that less than twenty-four (24) hours elapsed between Robertson's release and the victim's murder, as opposed to five months in *Martinez*, and that Robertson was transported to the victim's place of business after the last bus for the day had run, thereby placing her in a position of "special danger."

In support of their argument the plaintiffs cite, *inter alia, Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277 (6th Cir.1987). There, an inmate who held "trusty" status was given authorized and unsupervised use of a patrol car equipped with flashing lights by the defendant County. The complaint, brought under § 1983, alleged that the inmate was operating the vehicle when he pulled over his victim on the highway and murdered her, and that

the County's practice of providing a vehicle for his use caused a deprivation of the victim's constitutional rights. The Sixth Circuit agreed, distinguishing *Martinez*, and held that a claim was stated under § 1983.

In reaching its conclusion, that a claim was stated under § 1983, the *Nishiyama* court found to be important the facts that: (1) the inmate was in state custody before, during and after the murder; (2) the inmate was never reported as escaped even though he was absent for ten hours; and (3) the inmate was furnished with a fully equipped police car by the defendants. These facts, the court reasoned, created a sufficiently "close relationship" between the inmate's criminal acts and the defendant County's acts under color of state law. *Nishiyama v. Dickson County, Tennessee*, 814 F.2d at 280–81.

Arguably, the allegations of the complaint here when taken as true could support a finding of a "close relationship" similar to that found to exist in *Nishiyama* or the existence of a "special danger" to the victim such as was found lacking in *Martinez*. However, a recent Eighth Circuit case, which this court considers controlling, has severely circumscribed the factual situations under which such a special relationship may be found. *See Harpole v. Arkansas Department of Human Services*, 820 F.2d 923 (8th Cir.1987).

In *Harpole* the Arkansas Childrens Hospital, an agency of the State of Arkansas, released an infant to its mother's care despite allegations against her of abuse and neglect. Less than one month later the infant stopped breathing and died. The mother had forgotten to turn on a monitor which would have sounded an alarm when the child stopped breathing—as she had also forgotten the day her third child had stopped breathing and died. Suit was brought under § 1983 alleging the state agency violated the infant's constitutional rights by placing it in a dangerous environment.

In its opinion, the *Harpole* court discussed the *Martinez* decision and the decision of other U.S. Circuit Courts of Appeal

in which knowledge of a dangerous situation was held to create a special relationship between the state agency and the victim and thereby place on the agency a duty to protect. *See supra, Martinez v. California; Estate of Bailey v. County of York,* 768 F.2d 503 (3rd Cir.1985); *Jensen v. Conrad,* 747 F.2d 185, 190–94 (4th Cir. 1984), *cert. denied,* 470 U.S. 1052, 84 L.Ed.2d 818 (1985). But, in contrast with those decisions, the court held that the facts as alleged did not give rise to a § 1983 action, and concluded its discussion by stating that

> [w]e agree with the Seventh Circuit that "[w]e can find no basis in the language of the due process clauses or the principles of constitutional law for a general doctrine of 'special relationships'." (*quoting DeShaney v. Winnebago County Dept. of Social Services,* 812 F.2d 298, 303–04 (7th Cir.1987)).
>
> . . . .
>
> ... we should not rely solely on dicta, even Supreme Court dicta, when making decisions with constitutional implications. Logic and principle should control how much deference we give to the statement in *Martinez.*
>
> . . . .
>
> Without [the massive state control found in the prison environment] there is no constitutionally mandated duty to protect one private citizen from another. We do not believe that the concept of special relationships was intended to extend beyond prison or prison-like environments.

*Harpole v. Arkansas Dept. of Human Services,* 820 F.2d at 926–27.

Under the facts as alleged in this case, *Harpole* effectively forecloses any argument for § 1983 liability predicated upon a finding of a special relationship. Robertson had been released from state custody prior to the alleged crime and was acting only as a private individual. The defendants may have been negligent or even reckless in releasing him, a question the court does not reach, but, under the law in this circuit, they were under no constitutionally mandated duty to protect private citizens from his actions once he was freed. *Id.* at 927. *See also Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir.1986); *Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985); *Jackson v. Byrne,* 738 F.2d 1443 (7th Cir.1984); *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1985), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984); *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983); *Bowers v. Devito,* 686 F.2d 616 (7th Cir.1982) (no constitutional right to be protected by the state against being murdered by criminals or madmen). Because Robertson was acting only as a private individual, and the defendants were under no constitutional duty to protect others from his actions, the court must find that the "state action" or "under color of state law" requirement of § 1983 was not satisfied and that, therefore, the plaintiffs' § 1983 claim should be, and is hereby dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

The plaintiffs' remaining claims arise under Arkansas tort law, Arkansas statutory law and the Arkansas Constitution. The court believes that principles of comity and federalism require these claims, and the issues presented therein, to be heard first in the state courts of Arkansas and, for that reason, same are hereby dismissed without prejudice.