# IN THE SUPREME COURT OF IOWA

No. 08–2056

Filed February 24, 2012

**HAWKEYE FOODSERVICE DISTRIBUTION, INC.,**

Appellant,

vs.

**IOWA EDUCATORS CORPORATION** d/b/a **IOWA EDUCATORS CONSORTIUM; KEYSTONE AREA EDUCATION AGENCY, AREA EDUCATION AGENCY 267, PRAIRIE LAKES AREA EDUCATION AGENCY, MISSISSIPPI BEND AREA EDUCATION AGENCY, GRANT WOOD AREA EDUCATION AGENCY, HEARTLAND AREA EDUCATION AGENCY, NORTHWEST AREA EDUCATION AGENCY, LOESS HILLS AREA EDUCATION AGENCY, GREEN VALLEY AREA EDUCATION AGENCY,** and **GREAT PRAIRIE AREA EDUCATION AGENCY,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Appellees seek further review of the court of appeals decision reversing the district court's dismissal of appellant's claims based on a lack of standing and failure to state a claim. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Stephen R. Eckley and David W. Nelmark of Belin McCormick, P.C., Des Moines, for appellant.

Jim D. DeKoster  and Beth E. Hansen of Swisher and Cohrt, P.L.C., Waterloo, for appellees.

**ZAGER, Justice.**

Hawkeye Foodservice Distribution, Inc. (Hawkeye) filed a petition for declaratory and injunctive relief against the Iowa Educators Corporation (IEC) and ten Area Education Agencies (AEAs). Hawkeye asked the court to declare the establishment, existence, and operation of IEC was unauthorized and in violation of chapters 273 and 28E of the Iowa Code. It also asked the court to enjoin the AEAs and IEC from further operation in violation of Iowa law. Hawkeye also sought injunctive and declaratory relief on the ground that the AEAs and IEC operate in violation of chapter 23A. The district court found Hawkeye lacked standing to bring the chapter 273 and 28E claims and granted the defendants' motion to dismiss. The court also found Hawkeye had failed to allege sufficient facts demonstrating it was entitled to relief under chapter 23A and granted the motion to dismiss on this basis. Hawkeye appealed the dismissal. The court of appeals reversed, holding that the district court erred in concluding Hawkeye lacked standing to challenge the actions of the defendants under chapters 273 and 28E. The court of appeals also held that the district court erred by concluding Hawkeye had failed to allege sufficient facts showing a facial violation of Iowa Code chapter 23A (2007).[1] Defendants sought further review, which we granted. For the reasons set forth below, we reverse the district court.

---

[1]Hawkeye's petition was filed on June 17, 2008. It alleged the AEAs continue to violate chapters 23A, 28E and 273 by their participation in IEC. The AEAs formed the IEC in 2000. Therefore, if the AEAs violated chapters 23A, 28E and 273 by *forming* the IEC, then those violations would have occurred in 2000. Any claim that the formation of IEC was illegal might be barred by the statute of limitations in section 614.1. However, this litigation is at its early stage and neither party has fully briefed or developed facts relating to the issue. Hawkeye also claims the AEAs continue to violate chapters 273 and 28E by managing and participating as both directors and members in the operation of IEC. For purposes of this opinion, citation will be to the 2007 Code unless otherwise indicated.

## I. Factual Allegations in Hawkeye's Petition.

Hawkeye is a wholesale foodservice distributor and consultant that provides food and services to Iowa schools and other institutions. AEAs were created by statute in 1974 with the intent "to provide an effective, efficient, and economical means of identifying and serving children . . . who require special education." Iowa Code § 273.1. The stated intent was also to provide for media services and other programs and services for children requiring special education. *Id.* Iowa's AEAs incorporated IEC in 2000. The purpose of IEC was to provide a voluntary purchasing program for Iowa schools which would allow the schools to take advantage of aggressive pricing based on greater purchasing volume. This pricing is offered through IEC's chosen prime vendors. IEC assists its prime vendor in negotiating with manufacturers in order to secure favorable prices. These prices result in savings which are passed on to the AEAs. In return for favorable pricing, the AEAs are required to purchase at least sixty percent of their foodservice needs from the prime vendor. The prices charged by the prime vendor to IEC members are determined by a markup over the prime vendor's IEC-negotiated cost. At the direction of IEC, IEC's costs to the prime vendor are generally not available to potential competitors such as Hawkeye.

For its efforts, IEC collects an "administrative fee" from the prime vendor based upon a percentage of the sales the vendor obtains through the direction of IEC. According to Hawkeye's petition, "[t]his fee funds the general expenses of the IEC including executive salaries and benefits, discretionary pension contributions, automobiles, and expenses related to pursuing prospective members located in states other than Iowa." The fees generated by the food purchases controlled by IEC are substantial and continue to increase as IEC increases its control over the

marketplace. IEC also receives funding through grants and the AEAs' general budgets.

Since its formation, IEC has always selected Martin Brothers Distributing Co., Inc. (Martin Brothers) as its prime vendor for foodservice and related products, regardless of arguably superior bids from other qualified vendors. The director of IEC is Dan Dreyer, a former employee of Martin Brothers. Hawkeye alleges that it has lost revenue from customers who purchase foodservice and products through IEC's prime vendor Martin Brothers, and that IEC assists Martin Brothers in the sale, offering for sale, delivery, distribution or advertising of goods and services offered by private enterprise.

On June 17, 2008, Hawkeye filed its petition against IEC and the ten AEAs now comprising IEC. Count I alleged the AEAs did not have authority under Iowa Code chapter 273 to establish or operate IEC. Count II alleged the AEAs violated chapter 28E when they created and operated IEC and have otherwise failed to comply with the various provisions of chapter 28E. *See id.* §§ 28E.1–.42 (governing the joint exercise of governmental power by "public agencies"). Count III alleged the AEAs and IEC violated chapter 23A, "Noncompetition by Government," "[b]y engaging in and assisting Martin Brothers in the sale, offering for sale, delivery, distribution, or advertising of goods or services offered by private enterprise." Specifically, chapter 23A prohibits a school corporation from engaging in the "manufacturing, processing, sale, offering for sale, rental, leasing, delivery, dispensing, distributing, or advertising of goods or services to the public which are also offered by private enterprise."[2] *Id.* §§ 23A.1(1), .2(1)(*a*). Hawkeye sought "[a]

---

[2]Counts IV and V, which were dismissed and not appealed, alleged IEC violated Iowa's open meeting (chapter 21) and open record (chapter 22) laws.

declaration that the establishment, existence, and operation of the IEC are unauthorized under Iowa law;" "[e]quitable relief enjoining the AEAs and the IEC from continued operations in violation of Iowa law;" and attorney fees and costs.

The AEAs and IEC filed a motion to dismiss on August 14, 2008. In their motion, the defendants alleged—among other things—that Hawkeye lacked standing to seek dissolution of IEC or to challenge the validity of its actions, and they further alleged that the petition, on its face, failed to state a claim for relief under the Iowa Code chapters pled. Following a hearing, the district court found:

> The actions of the AEAs and IEC have resulted in damages to Hawkeye. It has lost and continues to lose substantial revenue from customers who purchase food products and services from IEC's prime vendor. Further, Hawkeye continues to lose out on word-of-mouth advertising and referrals.

However, the district court treated Hawkeye's petition as a request to dissolve IEC under section 504.1431. *See id.* § 504.1431 (providing the grounds for judicial dissolution of nonprofit corporations). It then concluded Hawkeye did not have standing to file its claims under Iowa Code chapters 273 or 28E because it did not fall within the class of persons Iowa law allows to seek the dissolution of a nonprofit corporation or to attack the actions of a nonprofit corporation (IEC). It further concluded Hawkeye failed to state a claim of a violation of chapter 23A because it failed to allege the goods offered by IEC's prime vendors are sold to the public, rather than to IEC's members—the AEAs and schools.

Hawkeye filed a motion to reconsider the ruling. Following the court's denial of the motion, Hawkeye filed a timely notice of appeal. We transferred the case to the court of appeals. The court of appeals determined the district court erred in ordering the dismissal of all three

counts. The AEAs and IEC made application for further review, which we granted.

## II. Standard of Review.

"We review a decision by the district court to dismiss a case based on the lack of standing for errors at law." *Godfrey v. State*, 752 N.W.2d 413, 417 (Iowa 2008); *see also U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). When reviewing a motion to dismiss, we accept the facts alleged in the petition as true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010). Dismissal is proper " 'only if the petition shows no right of recovery under any state of facts.' " *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 194 (Iowa 2007) (quoting *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 442 (Iowa 2002)).

## III. Counts I and II: Hawkeye's Standing to Challenge the Actions of the AEAs.

The district court found Hawkeye lacked standing to challenge the existence of IEC or the actions of the AEAs and dismissed counts I and II of Hawkeye's petition on that basis. Hawkeye has named IEC and the individual AEAs as defendants in its suit. In counts I and II of its petition, Hawkeye seeks an injunction against IEC's continued operation. Regarding count I, while IEC is *run* by the AEAs, IEC itself is not an AEA, so chapter 273 does not govern its actions. Regarding count II, IEC is a nonprofit corporation organized under chapter 504. Hawkeye has alleged each individual member of IEC is a public agency under Chapter 28E. *See* Iowa Code § 28E.2. IEC itself is a legal entity just like any other nonprofit corporation organized under chapter 504. As such, it is not a public agency and is therefore not subject to chapter 28E's rules governing the joint exercise of governmental powers. *See id.* § 28E.3.

In its ruling, the district court focused on Hawkeye's challenges to the validity of *IEC's* existence and actions. The district court determined that Hawkeye was not one of the parties entitled to seek judicial dissolution of IEC under section 504.1431. *See id.* § 504.1431(1) (listing parties permitted to bring an action for judicial dissolution of a nonprofit corporation). The court's conclusion was, in this respect, correct. Hawkeye is not the attorney general and it is not a member of IEC and therefore does not have standing to challenge the existence or actions of IEC under section 504.1431.

While this conclusion may be correct, it does not end the inquiry. In counts I and II of its complaint, Hawkeye seeks "[a] declaration that the establishment, existence, and operation of the IEC are unauthorized under Iowa law" and seeks "[e]quitable relief enjoining Defendants from continued operations in violation of Iowa law." The individual AEAs are named as defendants, along with IEC. Hawkeye does not allege that IEC's actions violate its own corporate charter. Instead, Hawkeye alleges the AEAs acted contrary to Iowa law by forming and continuing to operate and manage IEC as a nonprofit corporation.

Various provisions of Iowa law burden the AEAs with legal obligations that a chapter 504 nonprofit corporation would not have. Chapter 273, which created and governs the authority and actions of the AEAs, imposes limits on the AEAs. Hawkeye alleges one of those limits is that AEAs are not authorized to form a separate nonprofit corporation for the purpose of conducting statewide school purchasing programs. Hawkeye further alleges that the AEAs are not authorized "to market such programs to entities unrelated to the AEAs, nor does [the Code] provide authority for the AEAs to market such programs in interstate commerce." An AEA is empowered to "furnish educational services and

programs . . . to the pupils enrolled in public or nonpublic schools located within its boundaries." Iowa Code § 273.2(3). As a chapter 504 corporation, IEC is not burdened or limited by this statute.

Hawkeye also alleges "[t]he IEC was created and operates in violation of . . . Chapter 28E." Chapter 28E was enacted by the legislature "to permit state and local governments in Iowa to make efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to co-operate in other ways of mutual advantage." Iowa Code § 28E.1. Hawkeye alleged the AEAs are "public agencies" under chapter 28E. If the requirements of chapter 28E are met, public agencies can act jointly to create a separate legal entity to carry out the purposes of the 28E agreement. *Id.* § 28E.4. However, chapter 28E imposes numerous disclosure and reporting requirements on any legal entity created by such an agreement. *See, e.g., id.* § 28E.6(2), (3). Many of these duties and responsibilities are not imposed on a chapter 504 nonprofit corporation. Hawkeye does not rely on section 504.1431 when attempting to challenge the actions of the AEAs and IEC. Hawkeye has not claimed that IEC has violated its own articles of incorporation or bylaws. Hawkeye has alleged that the AEAs, by forming and operating IEC, have violated the provisions of chapters 273 and 28E.[3]

The main focus of counts I and II of Hawkeye's petition is that the AEAs themselves acted illegally when they first formed IEC. Hawkeye also claims that by continuing to be members of IEC, and having a representative of each AEA serve on the board of directors of IEC, *the*

---

[3]Hawkeye has alleged that the AEAs formed IEC in violation of chapter 273 and that by incorporating as IEC, instead of as a 28E entity, the AEAs are improperly exceeding their authority granted by statute.

*AEAs* continue to violate chapters 273 and 28E. Under this component of counts I and II, Hawkeye seeks to prevent the AEAs from illegally banding together through IEC and to stop their continued management and administration of IEC. This component of counts I and II was not addressed by the district court when it dismissed Hawkeye's petition. When the suit against the individual AEA defendants is considered, the standing analysis moves out of the realm of nonprofit corporation law. Hawkeye seeks an injunction against the AEAs to prevent their continued operation of IEC and an injunction against IEC to prevent it from acting contrary to Iowa law. Hawkeye is not seeking judicial dissolution under section 504.1431, so we do not need to determine whether Hawkeye has standing under chapter 504. To determine whether Hawkeye has standing to bring this action, we turn to our traditional standing analysis.

There are two elements to the test we use to determine whether a private party has standing to challenge government action: "A plaintiff 'must (1) have a specific personal or legal interest in the litigation, and (2) be injuriously affected.' " *Godfrey*, 752 N.W.2d at 418 (quoting *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005)). To satisfy the first element, "we require the litigant to allege some type of injury different from the population in general." *Id.* at 420. To satisfy the second element, "the injury cannot be 'conjectural' or 'hypothetical,' but must be 'concrete' and 'actual or imminent.' " *Id.* at 423 (quoting *Alons*, 698 N.W.2d at 867–68). The alleged injury can be harm done to the competitive interests of a company by government action that gives an advantage to a competitor. *See id.* (approving of a finding of standing where "the injury alleged to support standing involved the competitive interests of banks affected by agency rules that were claimed to give a

competitive advantage to credit unions" (citing *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 444 (Iowa 1983))). An injury is more likely to be imminent, and therefore sufficient to support standing, if the plaintiff alleges that it has "actually lost business in the past as a result of" improper governmental action. *Id.*

At this stage in the proceedings, we must accept every allegation contained in the pleadings as true. *McGill*, 790 N.W.2d at 116. Hawkeye alleged that the AEAs, through their operation of the IEC, violated and continue to violate two separate chapters of the Iowa Code by forming IEC and participating in IEC's management. Hawkeye's interest in these violations goes beyond that of the average citizen. By acting in concert to award Hawkeye's competitor a prime vendor contract, the AEAs are allegedly taking business away from Hawkeye. This personal interest is beyond that of an average citizen and satisfies the first element of the standing analysis.

Hawkeye also alleges that it has lost and continues to lose business based on the AEAs' illegal actions. The allegation of a loss of business in the past is sufficiently concrete to support a claim of imminent harm and satisfy step two of the standing analysis. *Godfrey*, 752 N.W.2d at 423. Hawkeye has standing to sue the AEAs for violations of chapters 273 and 28E. The district court's dismissal of counts I and II based on a lack of standing is reversed.[4]

---

[4]We note that the district court also found Hawkeye satisfied the traditional standing analysis, but nonetheless granted the motion to dismiss based on section 504.1431. As discussed above, section 504.1431 is not relevant to Hawkeye's claims against the AEAs, or by extension, to IEC.

**IV. Motion to Dismiss Hawkeye's Petition for Failure to State a Claim.**

The AEAs and IEC responded to Hawkeye's petition by filing a motion to dismiss. In their motion, they assert not only that Hawkeye lacks standing, but also claim that the AEAs are authorized by statute to form a nonprofit corporation such as IEC and to provide foodservice to school districts and students. They also claim that, on its face, Hawkeye's petition fails to allege that they have operated in violation of Iowa Code chapter 23A. Before we address the specific arguments presented in this case, we will first discuss some general principles regarding a motion to dismiss.

Iowa Rule of Civil Procedure 1.421(1)(*f*) allows a defendant to make a motion to dismiss for "[f]ailure to state a claim upon which any relief may be granted." In reviewing the district court's ruling granting IEC and the AEAs' motion to dismiss under rule 1.421(1)(*f*), the court of appeals stated, "We will affirm a dismissal only if the petition shows no right of recovery under any state of facts." Similarly, the district court stated, "A motion to dismiss can only be sustained when it appears to a certainty that a plaintiff would not be entitled to relief under any statement of facts that could be proved in support of the claims asserted." In its application for further review, IEC and the AEAs argue that this court should reconsider the standard for dismissal in light of "recent federal authority discarding [the no-right-of-recovery-under-any-state-of-facts] standard."

The United States Supreme Court has recently revised its dismissal standard under Federal Rule of Civil Procedure 12(b)(6), in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Following *Iqbal,* and quoting *Twombly* extensively,

the Supreme Court defined the federal standard for a motion to dismiss as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d at 884 (citations omitted). IEC and the AEAs encourage this court to similarly construe Iowa Rule of Civil Procedure 1.421(1)(*f*). We decline to do so.

The "plausibility standard" created by the two cases has generated a great deal of discussion, much of it negative. *See generally* Robert G. Bone, *Plausibility Pleading Revisited and Revised: A Comment on* Ashcroft v. Iqbal, 85 Notre Dame L. Rev. 849, 849 (2010) ("*Iqbal* does much more than clarify and reinforce key points in *Twombly*; it takes *Twombly*'s plausibility standard in a new and ultimately ill-advised direction."); Stephen R. Brown, *Reconstructing Pleading:* Twombly, Iqbal*, and the Limited Role of the Plausibility Inquiry*, 43 Akron L. Rev. 1265, 1266–67 (2010) (defending the framework created by *Twombly* and *Iqbal*, but noting that the cases were followed by "a deluge of criticism"); Kevin M. Clermont & Stephen C. Yeazell, *Inventing Tests, Destabilizing Systems*, 95 Iowa L. Rev. 821, 823 (2010) ("[B]y inventing a new and foggy test for the threshold stage of every lawsuit, [*Twombly* and *Iqbal*] have destabilized the entire system of civil litigation.").

For the most part, state high courts have declined to adopt the new standard announced in *Twombly* and *Iqbal*. *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 537 (Del. 2011); *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 424 (Tenn. 2011); *McCurry v. Chevy Chase Bank, FSB*, 233 P.3d 861, 863–64 (Wash. 2010); *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 189 n.4 (W. Va. 2010). *But see Doe v. Bd. of Regents*, 788 N.W.2d 264, 278 (Neb. 2010). These courts have given a variety of reasons for refusing to incorporate the new federal standard in their state rules. For example, the Washington court concluded that the *plausibility* factor

> adds a determination of the likelihood of success on the merits, so that a trial judge can dismiss a claim, even where the law does provide a remedy . . ., if that judge does not believe it is plausible the claim will ultimately succeed.

*McCurry*, 233 P.3d at 863. The Washington court also noted that the Supreme Court's plausibility standard was predicated on policy determinations not applicable to the Washington courts. *Id.*

We find this conclusion to be especially pertinent to this case. IEC and the AEAs have not presented this court with any evidence that our state court system is facing the sort of systemic pressures that contributed to the Supreme Court's decisions in *Twombly* and *Iqbal*. *See Cent. Mortg.*, 27 A.2d at 537; *McCurry*, 233 P.3d at 863–64; *cf. Webb*, 346 S.W.3d at 435–36 (finding, after full briefing on the issue, that the policy concerns that justified the change in the interpretation of the federal rule did not justify a similar change in Tennessee's standard for a motion to dismiss). Nor has any party addressed countervailing policy considerations that may exist. *McCurry*, 233 P.3d at 863. IEC and the AEAs rely only on the similarities between the federal rule and the Iowa rule to support their position. Based on this record, there is an

insufficient basis to make such an important change in our rules. The appropriate forum for revising the Iowa rules is the rulemaking process. *See Twombly*, 550 U.S. at 579, 595, 127 S. Ct. at 1979, 1988, 167 L. Ed. 2d at 955, 964 (Stevens, J., dissenting). "This process permits policy considerations to be raised, studied, and argued in the legal community and the community at large." *McCurry*, 233 P.3d at 864. Accordingly, we decline to depart from our well-established standard for reviewing a motion to dismiss.

Under our well-established standard for a motion to dismiss under rule 1.421(1)(*f*), "The motion to dismiss admits . . . [the] well-pleaded facts in the petition for the purpose of testing their legal sufficiency." *Herbst v. Treinen*, 249 Iowa 695, 699, 88 N.W.2d 820, 823 (1958); *see also Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001). Recently, we have described the standard for granting a motion to dismiss as follows:

> A court should grant a motion to dismiss if the petition fails to state a claim upon which any relief may be granted. In considering a motion to dismiss, the court considers all well-pleaded facts to be true. A court should grant a motion to dismiss only if the petition " ' "on its face shows no right of recovery under any state of facts." ' " Nearly every case will survive a motion to dismiss under notice pleading. Our rules of civil procedure do not require technical forms of pleadings. . . .
>
> A "petition need not allege ultimate facts that support each element of the cause of action[;]" however, a petition "must contain factual allegations that give the defendant 'fair notice' of the claim asserted so the defendant can adequately respond to the petition." The "fair notice" requirement is met if a petition informs the defendant of the incident giving rise to the claim and of the claim's general nature.

*U.S. Bank*, 770 N.W.2d at 353–54 (citations omitted). The only issue when considering a motion to dismiss is the "petitioner's right of access to the district court, not the merits of his allegations." *Rieff*, 630 N.W.2d at 284 (citations and internal quotation marks omitted). The court

cannot rely on evidence to support a motion to dismiss, nor can it rely on facts not alleged in the petition. *Id.* We now turn to Hawkeye's petition to determine whether IEC and the AEAs have met their burden and shown that Hawkeye's petition fails to state any set of facts which would entitle it to relief.

**A. Counts I and II: The Alleged Violations of Chapters 273 and 28E.** After finding Hawkeye lacked standing to bring counts I and II, the district court dismissed those counts of Hawkeye's petition. As noted above, this was an error. Therefore, the district court did not reach the alternative ground argued by IEC and the AEAs that Hawkeye had failed to state a claim for relief under chapters 273 and 28E. Our cases have been somewhat inconsistent as to whether we should decide such issues on appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, our cases also articulate the appellate principle that "we assume the district court rejected each defense to a claim on its merits, even though the district court did not address each defense in its ruling." *Id.* at 539. The AEAs and IEC were the successful parties in the district court. "It is established that a successful party in the district court may, without appealing, save the judgment . . . based on grounds urged in the district court but not included in that court's ruling." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999); *see also Krohn v. Judicial Magistrate Appointing Comm'n*, 239 N.W.2d 562, 563 (Iowa 1976) ("[W]e may affirm the ruling on a proper ground urged but not relied upon by the trial court."). In other words, when reviewing a trial court's ruling,

> [w]e first examine the basis upon which the trial court rendered its decision, affirming on that ground if possible. If we disagree with the basis for the court's ruling, we may still affirm if there is an alternative ground, raised in the district court and urged on appeal, that can support the court's decision.

*Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 811–12 (Iowa 2000) (citations omitted). We have likewise applied the rule in reversing a district court ruling. *Id.* at 811–12, 818–19 (reversing district court ruling quieting title in city and remanding for entry of judgment quieting title in plaintiff based upon equitable estoppel, a ground plaintiff urged in the district court but not considered by that court). We will consider an alternative ground raised in the district court and urged on appeal even though the district court has not had an opportunity to rule on the alternative ground. *See Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 662–66 (Iowa 2008) (reversing grant of summary judgment after considering grounds for summary judgment that were presented to, but not ruled on by, the district court).[5] Since we disagreed with the district court's decision that Hawkeye lacked standing to bring the action, we must now determine whether the district court's dismissal can be

---

[5]In *Kern*, the district court granted Palmer Chiropractic College's (Kern's employer) motion for summary judgment after finding, as a matter of law, the employer had not breached the employment contract. 757 N.W.2d at 654, 657. Kern's suit accused three officials at the college of intentional interference with contractual relations. *Id.* at 657. Once it found Palmer had not breached the contract, the district court "reasoned that because, as a matter of law, Palmer committed no breach of Kern's employment contract, the individual defendants could have no liability for tortiously causing Palmer to breach that contract." *Id.* at 661.

We reversed the district court's ruling granting Palmer's motion for summary judgment. *Id.* Once that reversal occurred, the original grounds the district court relied on when granting the individual defendants' motions for summary judgment no longer existed. Rather than remand the case for a new determination in light of our ruling on Palmer's motion for summary judgment, we "consider[ed] whether the summary judgment record [could] sustain the summary judgment in favor of the individual defendants." *Id.* at 661–62. We concluded, based on the record, that summary judgment was still appropriate for two of the three individual defendants. *Id.* at 662–65.

affirmed on any of the other grounds that IEC and the AEAs raised in that court and urged on appeal.  *See Fencl*, 620 N.W.2d at 811–12.

IEC and the AEAs also asked the district court to dismiss counts I and II for failing to state a claim upon which relief could be granted.  This issue was raised at the district court level and urged on appeal.  We also conclude that the record made before the district court is sufficient to allow us to decide this issue and militates against remand to the district court.  We will now determine whether we can affirm the district court's dismissal of counts I and II on the ground that Hawkeye failed to state a claim upon which relief can be granted.

In count I, Hawkeye alleges chapter 273 does not grant the AEAs the authority to form and operate IEC.  In count II, Hawkeye alleges that the AEAs violated chapter 28E by forming and continuing to operate IEC as a nonprofit corporation instead of a 28E intergovernmental entity.

Chapter 273 created and governs the AEAs.  According to section 273.2(2), "[a]n area education agency established under this chapter is a body politic as a school corporation for the purpose of exercising powers granted under this chapter, and may sue and be sued."  Hawkeye alleges that, as school corporations, the AEAs operate under the Dillon Rule.  The Dillon Rule is "a rule for the determination of local government power" that was first established in *Merriam v. Moody's Executors*, 25 Iowa 163, 170 (1868), an opinion authored by former Chief Justice John Dillon.  *Polk Cnty. Bd. of Supervisors v. Polk Commonwealth Charter Comm'n*, 522 N.W.2d 783, 790 (Iowa 1994).  Under the Dillon Rule,

> municipal and county governments could only possess and exercise powers which were: "(1) expressly granted by the legislature; (2) necessarily or fairly implied in or incident to the powers expressly granted; and (3) those indispensably essential—not merely convenient—to the declared objects and purposes of the municipality."

*Id.* at 790–91 (quoting *Gritton v. City of Des Moines,* 247 Iowa 326, 331, 73 N.W.2d 813, 815 (1955)). The "home rule" amendments, which gave local and county governments greater power to enact legislation, were added to the state constitution in 1968 and 1978, and "removed the Dillon doctrine from Iowa law." *Id.* at 791. However, the constitutional amendments refer only to the home rule doctrine as applied to counties and municipalities and do not mention other entities. *See* Iowa Const. art. III, §§ 38A, 39A.

In the decades following the home rule amendments, we have continued to state that the only powers a school district has are those that are expressly granted or necessarily implied in governing statutes. *See Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 577 N.W.2d 845, 848 (Iowa 1998); *Ne. Cmty. Educ. Ass'n v. Ne. Cmty. Sch. Dist.,* 402 N.W.2d 765, 767 (Iowa 1987); *McFarland v. Bd. of Educ.,* 277 N.W.2d 901, 906 (Iowa 1979). Notwithstanding these cases, IEC and the AEAs claim the applicability of the Dillon Rule to school corporations like the AEAs has been called into question by *Gannon v. Board of Regents,* 692 N.W.2d 31 (Iowa 2005). In *Gannon,* we were asked to determine whether the Iowa State University Foundation was fulfilling a government function under the Iowa Freedom of Information Act when it engaged in "the solicitation and management of private funds for a public university." *Gannon,* 692 N.W.2d at 39. The district court found "the solicitation and management of private donations was not a duty or function of ISU" because it was not listed in the state or federal statutes that described the objectives of the university. *Id.* at 40. We "reject[ed] such a narrow and archaic interpretation of the function of a university" and reversed the district court's ruling. *Id.*

However, *Gannon* does not bear the doctrinal weight the AEAs and IEC place upon it. The issue in *Gannon* was whether the ISU Foundation was performing a government function and was therefore subject to the provisions of the open records act. *Id.* at 39. That case did not address the Dillon Rule or the applicability of the home rule statutes to school corporations. Our prior cases regarding the authority of school corporations as expressed in the Dillon Rule are still applicable to this dispute.

We now turn to the AEAs' motion to dismiss Hawkeye's claim that the AEAs violated chapter 273 when they formed a nonprofit corporation to perform the functions IEC is performing. "The only powers of a school district are those expressly granted or necessarily implied in governing statutes." *Lockhart*, 577 N.W.2d at 848 (citation and internal quotation marks omitted). While an AEA is not a school district, it "is a body politic as a school corporation for the purpose of exercising powers granted under [chapter 273]." Iowa Code § 273.2(2). A school district is also "a body politic as a school corporation . . . and as such may . . . exercise all the powers granted by law." Iowa Code § 274.1. Therefore, like a school district, an AEA has only those powers expressly granted or necessarily implied by law. Hawkeye has alleged that chapter 273 does not provide the AEAs with the authority to form IEC, that chapter 273 does not expressly or impliedly provide AEAs with the authority to form a statewide school purchasing program, and that even if the AEAs did have this authority, they could not delegate this authority to another entity without express statutory authorization.

To survive a motion to dismiss, Hawkeye's petition need only allege facts that, if proven, would entitle Hawkeye to recovery. *See U.S. Bank*, 770 N.W.2d at 353 ("A court should grant a motion to dismiss only if the

petition on its face shows no right of recovery under any state of facts." (citation and internal quotation marks omitted)). IEC and the AEAs have not shown Hawkeye's petition fails to meet this standard. Hawkeye has alleged that the Dillon Rule applies to the AEAs. Because the rule applies, Hawkeye has also alleged the AEAs have only those powers expressly granted to them, "those necessarily implied or necessarily incident to the powers expressly granted, and those absolutely essential to the declared objects and purposes of the school corporation." Hawkeye lists the powers and purposes of the AEAs that *are* found in chapter 273, and then alleges that "Chapter 273 does not give the AEAs the right to jointly form a separate corporation for the purpose of conducting statewide school purchasing programs." Additionally, even if the AEAs had the authority to create IEC, which is not conceded, there is no express or clearly implied authority under chapter 273 for the AEAs or IEC to conduct a statewide food purchasing program. If these allegations are true, which we assume they are for the purpose of testing the petition's legal sufficiency, then the AEAs exercised a power they had not been granted, which is a violation of chapter 273. Under the well-pleaded facts asserted in the petition, we conclude that an adequate claim has been asserted by Hawkeye which would defeat a motion to dismiss on this basis.

Much of the same logic and reasoning applies to count II of Hawkeye's petition, the alleged violation of section 28E. Hawkeye alleged that "[t]he IEC was created and operates in violation of Iowa Code Chapter 28E . . . ." It is undisputed that the AEAs did not comply with chapter 28E when they formed IEC. The issue is whether the entity formed as a result of the cooperation among the AEAs is the type of entity that still must be governed by a 28E agreement. Hawkeye has

alleged IEC is such an entity and that chapter 28E is the exclusive mechanism for such action, without conceding a 28E entity is even authorized. If Hawkeye is able to establish the facts contained in the petition, then it has established a violation of chapter 28E. Accordingly, it was improper to dismiss Hawkeye's petition for failure to state a claim upon which relief can be granted. The district court erred when it dismissed counts I and II of Hawkeye's petition.

**B. Count III: The Alleged Violation of Chapter 23A.** Regarding count III, the violation of chapter 23A, the well-pleaded facts in the petition preclude the granting of the motion to dismiss. The AEAs are school corporations for the purposes of exercising their powers. Iowa Code § 273.2(2). A school corporation is a political subdivision under Iowa Code section 23A.1(1). Unless specifically authorized by a statute, rule, ordinance or regulation, political subdivisions are prohibited from

> [e]ngag[ing] in the manufacturing, processing, sale, offering for sale, rental, leasing, delivery, dispensing, distributing, or advertising of goods or services to the public which are also offered by private enterprise unless such goods or services are for use or consumption exclusively by the state agency or political subdivision.

Iowa Code § 23A.2(1)(*a*).

Hawkeye has alleged IEC and the AEAs "assist[ed] Martin Brothers in the sale, offering for sale, delivery, distribution, or advertising of goods or services offered by private enterprise." Hawkeye has also alleged the AEAs and IEC are not authorized to engage in such practices. Specifically, Hawkeye alleged the AEAs, acting through IEC, have "solicit[ed] for membership entities" outside of Iowa. Hawkeye also alleged IEC gets an administrative fee from the prime vendor, which has always been Martin Brothers, based on a percentage of the sales the prime vendor receives through its IEC contract. Hawkeye alleged IEC

markets aggressively to increase its membership and in doing so increases the sales "volume for their chosen prime vendor [Martin Brothers], which in turn creates additional fee revenue to the IEC." Hawkeye alleged that IEC is actively competing with private enterprise to secure this additional volume for their chosen prime vendor. Hawkeye alleged that the price discrimination created by IEC's activities (including aggressive marketing and advertising) destroys fair competition in the marketplace. As pled, these allegations support the claim that IEC or the AEAs are involved in the offering for sale or advertising of goods or services.

Further, Hawkeye must have alleged the activity the AEAs or IEC engaged in was directed "to the public." Hawkeye has alleged that IEC advertises and assists its prime vendor in securing sales to Iowa schools and school districts, as well as "entities outside the State of Iowa." Hawkeye has also alleged that "IEC is providing services to entities other than schools and school districts in Iowa." When ruling on a motion to dismiss, the court must view the factual allegations "in the light most favorable to the plaintiff with doubts resolved in that party's favor." *Geisler v. City Council*, 769 N.W.2d 162, 165 (Iowa 2009) (citation and internal quotation marks omitted). It is possible that "prospective [IEC] members located in states other than Iowa" and "entities other than schools and school districts in Iowa" constitute members of the public. If they do, then Hawkeye has alleged that IEC and the AEAs engage in activity directed to the public. At this preliminary stage, Hawkeye's petition sufficiently alleges IEC and the AEAs sold goods to the public, or advertised goods and services for sale to the public.

Hawkeye also alleged those goods or services provided by the AEAs or IEC are also offered by private enterprise. Hawkeye has alleged that it

is a foodservice distributor and offers food and food-related items to school districts as well as other institutional consumers.

Hawkeye must allege that the goods the AEAs provide are not used or consumed exclusively by the AEAs. Hawkeye alleged that "the IEC is providing services to entities other than schools and school districts in Iowa." Entities that are not school districts in Iowa could not be members of an AEA. If this allegation is taken as true, then the AEAs, acting through IEC, are operating in violation of section 23A.2 by operating IEC.

Though other issues have been raised regarding count III, we do not need to resolve them at this time. This litigation is in its early stages. Our only goal at this time "is to test the legal sufficiency of the petition." *Geisler*, 769 N.W.2d at 165. The facts as alleged in Hawkeye's petition, if proved, state a claim under chapter 23A and are therefore sufficient to survive a motion to dismiss count III.

### V. Disposition.

The district court erred in dismissing counts I and II of Hawkeye's petition against IEC and the AEAs for lack of standing. Hawkeye's petition alleges facts that give it standing to challenge the actions of the AEAs and IEC. It was also error to dismiss counts I, II, and III based on a failure to state a claim upon which any relief can be granted. The factual allegations set forth in the petition, if proved, state statutory claims sufficient to defeat a motion to dismiss.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Wiggins, Waterman and Mansfield, JJ., who take no part.