WATERMAN, Justice
(concurring specially).
I respectfully concur in the majority opinion. I write separately to set forth my view that the claims against the State fail on several legal grounds not reached by the majority. Because the facts of this case cry out for a remedy, I begin by noting this appeal resolves only those claims by the plaintiffs and the nursing home against the State of Iowa. The plaintiffs will get their day in court on their tort claims against the nursing home operator, Pomeroy Development, Inc., which chose to accept a known sex offender as an inpatient resident and allegedly failed to properly monitor him to protect its vulnerable, elderly residents, including Mercedes Gottschalk.
*591 In my view, the State’s tort duty ended upon William Cubbage’s unconditional release from its custody and transfer to the nursing home. Upon that transfer, Cub-bage became Pomeroy’s responsibility. “Liability follows control,... ” Estate of McFarlin v. State, 881 N.W.2d 51, 64 (Iowa 2016). A party in control can take precautions to reduce the risk of harm to others. See McCormick v. Nikkei & Assocs., Inc., 819 N.W.2d 368, 374 (Iowa 2012) (“The reason is simple: The party in control ... is best positioned to take precautions to identify risks and take measures to improve safety.”), Section 41 of the Restatement (Third) of Torts: Liability for Physical & Emotional Harm, is directly on point and provides,
(a) An actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship.
(b) Special relationships giving rise to the duty provided in Subsection (a) include:
[[Image here]]
(2) a custodian with those in its custody[J
Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 41 (Am. Law Inst. 2012) [hereinafter Reinstatement (Third)]. The comment accompanying that section, entitled “Duty of custodians,” further explains,
Custodians of those who pose risks to others have long owed a duty of reasonable care to prevent the person in custody from harming others. The classic custodian under this Section is a jailer of a dangerous criminal. Other well-established custodial relationships include hospitals for the mentally ill and for those with contagious diseases. Custodial relationships imposing a duty of care are limited to those relationships that exist, in' significant part, for the protection of others from risks posed by the person in custody. The duty of care is limited to the period of actual custody.
Id. § 41 cmt. /, at 67 (emphasis added). This bright-line rule is clear, easy to apply, and consistent with Iowa caselaw. As the court of appeals correctly concluded,
[U]pon the unconditional discharge of Cubbage from the CCUSO—a decision made by the district court—the special relationship between the State and Cub-bage ended. See Iowa Code § 229A.2(4) (“‘Discharge’ means an unconditional discharge from the sexually violent predator program. A person released from a secure facility into a transitional release program or released with or without supervision is not considered to be discharged.”). After the district court issued the discharge order, the State had no ongoing obligation to monitor or supervise Cubbage.
(Footnote omitted.) The district court applied the same analysis in entering summary judgment for the State. Once an inmate obtains his or her release from incarceration, the state is no longer subject to a tort-law duty for harm the former inmate inflicts on another person. This no-duty rule is not based on foreseeability of harm, but rather reflects a policy choice, making tradeoffs between the goals of deterrence and victim compensation and the costs of imposing liability.
Foreseeability alone is insufficient to create a duty in tort for the misconduct of others. See Thompson v. Kaczinski, 774 N.W.2d 829, 835 (Iowa 2009) (removing foreseeability from duty analysis). Many inmates who serve their time or otherwise win release from jail or prison—or in this case, the State’s civil commitment unit for sexual offenders (CCUSO)—foreseeably commit more crimes. See Binschus v. *592 State, 186 Wash.2d 573, 581, 380 P.3d 468, 472-73 (2016) (en banc) (recognizing recidivism rate is over fifty percent and therefore “one could argue that in almost any case, it is foreseeable that an inmate may commit another crime after release”). But we have never imposed civil liability on the state for crimes a person commits after release from custody. As the drafter’s comment recognizes, imposing such tort liability would have a chilling effect on parole or bail determinations for pretrial release:
Courts have been reluctant to impose a duty on actors who make discretionary determinations about parole or prere-lease programs, even though these decisions arise in a custodial relationship. Imposing such a duty, thereby creating concern about potential liability, might detrimentally affect the decisionmaking of parole boards and others making similar determinations.
Restatement (Third) § 41 cmt. /, at 67-68.
We reached the same conclusion in Leonard v. State and rejected “the potential for limitless liability” by the state for harm to persons attacked by a former custodial patient. 491 N.W.2d 508, 512 (Iowa 1992). In Leonard, a state mental hospital discharged a patient, Henry Parrish, to outpatient care after treating him for bipolar disorder. Id. at 509-10. Shortly after his release, Parrish severely beat a coworker, John Leonard, without provocation. Id. at 510. Leonard sued the state. Id. We held as a matter of law the treating psychiatrist employed by the state owed no duty to Leonard, a member of the general public. Id. at 512. We concluded the “risks to the general public posed by the negligent release of dangerous mental patients would be far outweighed by the disservice to the general public if treating physicians were subject to civil liability for discharge decisions.” Id. We feared that “[t]he treating physician would indulge every presumption in favor of further restraint, out of fear of being sued.” Id. (quoting Sherrill v. Wilson, 653 S.W.2d 661, 664 (Mo. 1983) (en banc)).
Today’s case is an even stronger one for a no-duty analysis. The district court not only ordered Cubbage’s release, but also approved the plan whereby he would be transferred to Pomeroy. See Iowa Code § 229A.10 (2011) (providing that a petition for discharge must be authorized by the court); id. § 229.13(1)(6) (allowing court to place individual with “serious mental impairment” under care of appropriate hospital or facility for treatment).
Other courts have held the government is not liable in tort after an inmate’s release from incarceration, even when it is foreseeable he will reoffend. In Binschus, a former inmate fatally shot six strangers and injured four others in a psychotic episode several months after his unconditional release from a county jail. 380 P.3d at 470. Civil actions were filed against the county, alleging it negligently failed to diagnose and treat his dangerous condition before releasing him. Id. The trial court granted the county’s motion for summary judgment based on lack of duty and proximate cause. Id. The Washington Supreme Court affirmed, holding the county owed no duty to the plaintiffs after the inmate’s release from jail. Id. at 472 (noting “[t]he practical implications of imposing such a broad duty on jails [would be] striking”); see also Fryman v. Harrison, 896 S.W.2d 908, 910 (Ky. 1995) (holding jailer “cannot be held individually responsible for the criminal acts of an inmate” after release from custody), modified by Gaither v. Justice & Pub. Safety Cabinet, 447 S.W.3d 628, 638 (Ky. 2014); Holloway v. State, 293 Neb. 12, 875 N.W.2d 435, 447 (2016) (holding state was not liable in tort for crimes of former inmate because it lacked control “after he was released”); cf. Wells v. Walk *593 er, 671 F.Supp. 624, 627 (E.D. Ark. 1987) (dismissing crime victim’s § 1983 claim because prison officials owed “no constitutionally mandated duty to protect private citizens [after inmate] was freed”), aff'd, 852 F.2d 368 (8th Cir. 1988).
Cubbage was not under state supervision when he assaulted Mercedes Gott-schalk. Indeed, courts in most states, including Iowa, reject governmental tort liability even for crimes committed by parolees or probationers who are under state supervision. Fitzpatrick v. State, 439 N.W.2d 663, 667-68 (Iowa 1989) (affirming dismissal of tort claim against parole officer by victim shot by parolee); Bartunek v. State, 266 Neb. 454, 666 N.W.2d 435, 442 (2003) (collecting cases). These courts decline to find a duty because “[t]he level of control afforded to a parole or probation officer is not such that an officer ... ‘takes charge of a third person,’ ” given that the parolee or probationer is “generally free to conduct his or her day-to-day affairs.” Bartunek, 666 N.W.2d at 442. Courts note that imposing tort liability on government defendants for crimes committed by offenders under supervision would result in continued detentions and discourage parole, probation, or pretrial release. Compare Sorge v. State, 171 Vt. 171, 762 A.2d 816, 821-22 (2000) (declining to impose tort duty on state for juvenile in custody and collecting cases), with Leonard, 491 N.W.2d at 512 (noting that imposing liability on therapist for patient’s postrelease assault would cause doctors to overrestrain patients). If the State is not liable in tort for crimes committed by an offender released under supervision, it cannot be liable in tort after an unconditional release.
Cubbage made no threats against Mercedes Gottschalk or any other Pomeroy resident while he was in state custody at CCUSO. He had never met her. This case is distinguishable from those imposing a duty for failing to take action when an inmate or patient in custody names someone he overtly threatens to harm upon his release. See, e.g., Tarasoff v. Regents of Univ. of Cal., 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 343 (1976) (imposing liability on state when patient in custody confided in state-employed therapist that he intended to kill Tatania Tarasoff and made good on his threat after his release from hospital). Generalized threats while in custody are insufficient to create a duty to warn. Four years after deciding Tara-soff, the California Supreme Court addressed
the propriety of imposing on those responsible for releasing or confining criminal offenders a duty to warn of the release of a potentially dangerous offender who ... has made a generalized threat to a segment of the population.
Thompson v. County of Alameda, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728, 733 (1980). While in a county jail, an inmate threatened to “take the life of a young child residing in the neighborhood” without naming any child. Id., 167 Cal.Rptr. 70, 614 P.2d at 730. The jailers released him into the temporary custody of his mother without warning her or other parents in the neighborhood of his threat. Id. Within twenty-four hours, he killed a young child who lived a few doors away. Id. The parents sued the county, alleging it breached a duty to warn parents in the neighborhood. Id. The trial court dismissed the lawsuit, and the California Supreme Court affirmed, holding such a generalized threat did not support a duty to warn. Id., 167 Cal.Rptr. 70, 614 P.2d at 730, 738. The court declined to impose “blanket liability” on the county for failing to warn neighborhood parents or the offender’s mother of his dangerous tendencies upon his supervised release. Id., 167 *594 Cal.Rptr. 70, 614 P.2d at 734. The court distinguished Tamsoff because neither “a direct or continuing relationship between” the parties and the county existed, nor was the victim a “foreseeable or readily identifiable target” when the offender made merely a generalized threat. Id. The court noted requiring the county to warn the public would “jeopardize rehabilitative efforts” of programs like parole and probation because “authorities would be far less likely to authorize release given the substantial drain on their resources which such warnings might require.” Id., 167 Cal.Rptr. 70, 614 P.2d at 737. Additionally, the court declined to impose a duty to warn the offender’s mother, his custodian, noting she had been “aware of her son’s incarceration for the previous 18 months.” Id.
I see a parallel between these cases. Pomeroy was aware of Cubbage’s incarceration and crimes when it received him into its care. Any warning would have been inherently generalized in nature, given that Cubbage did not make threats toward any Pomeroy resident—either generally or specifically—before his unconditional discharge from state custody.
There is another bar to recovery against the State—the common law public-duty doctrine.[3] In Estate of McFarlin, we applied the public-duty doctrine to affirm a summary judgment motion dismissing tort claims against the state in a wrongful-death action arising out of a boating accident on a state-owned lake, a confined area. 881 N.W.2d at 64. We noted the applicability of the public-duty doctrine under the Third Restatement:
In Thompson v. Kaczinski, we adopted section 7 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. The reporter’s note to section 7 acknowledges the continued vitality of the public-duty doctrine:
Deference to discretionary decisions of another branch of government. The “public-duty” doctrine is often explained as preventing government tort liability for obligations owed generally to the public, such as providing fire or police protection. Only when the duty is narrowed to the injured victim or a prescribed class of persons does a tort duty exist.
Section 37 provides that “[a]n actor whose conduct has not created a risk of physical ... harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable.” Section 40, entitled “Duty Based on Special Relationship with Another” provides that “[a]n actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship.” We conclude the public-duty doctrine remains good law after our adoption of sections of the Restatement (Third) of Torts.
Id. at 59-60 (alterations in original) (footnote omitted) (citation omitted) (first quoting Restatement (Third) .§ 7, reporter’s note cmt. g, at 93-94 (Am. Law Inst. 2010); then quoting id. § 37, at 2; and then quoting id. § 40(a), at 37). Earlier cases, which remain good law, applied the public-duty doctrine to dismiss tort claims brought by persons injured by someone the police re *595 leased from custody or failed to detain or monitor. See Fitzpatrick, 439 N.W.2d at 667-68; Hildenbrand v. Cox, 369 N.W.2d 411, 414-16 (Iowa 1986) (affirming summary judgment dismissing tort claim by estate of drunk driver who died in accident shortly after police questioned but failed to arrest him following his collision with a planter on the town square); see also Kolbe v. State, 626 N.W.2d 721, 729-30 (Iowa 2001) (holding public-duty doctrine barred tort claim by victim of visually impaired driver to whom the state carelessly issued a driver’s license); Sankey v. Richenberger, 456 N.W.2d 206, 208-09 (Iowa 1990) (dismissing tort claims against police chief by victims shot at city council meeting chief attended). The plaintiffs and Pomeroy fail to cite a ease from any jurisdiction imposing tort liability on a state or local government for the acts of a former patient or inmate after his or her unconditional release from custody. If we allowed' the claimants in today’s case to recover against the State, it would be difficult to set a limiting principle on the scope of governmental liability for third-party criminal conduct.
The district court and court of appeals determined the State was entitled to summary judgment against Pomeroy based on the State’s statutory immunity under Iowa Code section 669.14(4).[4] Our court’s majority did not need to reach that issue or the public-duty doctrine after affirming summary judgment on other grounds. I mention that immunity and the public-duty doctrine as additional reasons the analysis in the dissenting opinions fails to salvage the claims against the State.
Por all these reasons, I concur in the majority’s opinion affirming the decision of the court of appeals and district court’s summary judgment.
Mansfield, J., joins this special concurrence.

. The district court and court of appeals did not reach the public-duty doctrine, but the State included the doctrine in its motion for summary judgment and appellate briefs as an alternative ground for dismissal. "We will consider an alternative ground raised in the district court and urged on appeal even though the district court [did] not .,. rule on the alternative ground.” Hawkeye Foodser v. Distrib., Inc. v. Iowa Educators Corp., 812 N.W.2d 600, 610 (Iowa 2012).

. The district court granted the State’s motion for summaty judgment on Pomeroy’s negligent misrepresentation claim based on Iowa Code section 669.14(4). Pomeroy did not challenge that ruling on appeal, and the court, of appeals affirmed the district court for that reason.